EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Mar 16 2007 10:56AM MDT
Filing ID: 14151379
Review Clerk: Joleen K Jenkins

| | |
|---|---|
| District Court, Douglas County,<br>State Of Colorado<br>4000 Justice Way<br>Castle Rock, Colorado 80109 | |
| EchoStar Satellite L.L.C.,<br>a Colorado limited liability company<br><br>**Plaintiff,**<br><br>v.<br><br>JVC Entertainment, Inc., a/k/a JVC Entertainment-TV, Inc. a New York corporation; Julio Vanegas, an individual; Nicanor Cordova, an individual; David G. Lubell, Esq., an individual; and Propp, Lubell & Lapidus, LLP., a New York limited liability partnership;<br><br>**Defendants.** | ▲ **COURT USE ONLY** ▲ |
| Attorney for the Plaintiff:<br>Jeffery Cohen, Esq.,#10876<br>Gary Tucker, Esq., #15811<br>Cohen & Associates, P.C.<br>1600 Stout Street, Suite 1710<br>Denver, CO 80202<br>Phone: 303.825.4120<br>Fax: 303.825.4121<br>E-mail:jcohen@cohenlawdenver.com;<br>gtucker@cohenlawdenver.com | Case No:<br><br>Division:<br><br>Courtroom: |

**COMPLAINT AND JURY DEMAND**

EchoStar Satellite L.L.C. (hereinafter "Plaintiff" or "EchoStar"), by and through its counsel Cohen & Associates, P.C. hereby makes the following allegations in support of its Complaint.



EXHIBIT
A

I.

**PARTIES, JURISDICTION AND VENUE**

1. EchoStar is a Colorado limited liability company having its principal offices in Douglas County, Colorado, located at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

2. Defendant JVC Entertainment, Inc. a/k/a JVC Entertainment-TV (hereinafter "JVC")purports to be a New York corporation with its principal place of business located at 41 Midland Avenue, Port Chester, New York, 10573.

3. Defendant Julio Vanegas (hereinafter "Vanegas") is an individual. Upon information and belief, Vanegas is the Executive Director of JVC and he resides at 53-07 Broadway, Woodside, New York, 11377.

4. Defendant Nicanor Cordova (hereinafter "Cordova") is an individual. Upon information and belief, Cordova is the Marketing Director of JVC and he resides at 51 Traci Lane, Hopewell Junction, New York, 12533.

5. Upon information and belief, Vanegas and Cordova may be the same individual.

6. Defendant, David G. Lubell, Esq. (hereinafter "Lubell") is an attorney licensed to practice law in the

State of New York. Lubell maintains a business address at 1600 Broadway, 21st Floor, New York, N.Y. 10038.

7. Defendant Propp, Lubell & Lapidus, LLP (hereinafter, "PLL") is a New York limited liability law partnership that maintains its office at 1600 Broadway, 21st Floor, New York, N.Y. 10038. At all times relevant to this Complaint, Lubell was a member of PLL.

8. At all times relevant to this Complaint, Defendants LLP represented Vanegas and JVC. JVC, Vanegas, Cordova, PLL and Lubell may hereinafter collectively be referred to "Defendants."

9. The Court has subject matter jurisdiction over the facts and issues raised in this action. The Court has in personam jurisdiction over all of the Defendants pursuant to Colorado's "Long Arm Statute", C.R.S. 13-1-124(1) and by contract. See paragraph 9.6, Exhibit A described below.

10. Venue is proper under C.R.C.P. Rule 98(c) and by contract. See paragraph 9.6, Exhibit A described below.

## II.

## GENERAL ALLEGATIONS

11. EchoStar is a satellite carrier engaged in the business of providing and distributing direct broadcast signals of video programming under the name DISH Network.

12. In or about late 2004, and continuing into January 2005, EchoStar negotiated with JVC, Vanegas and Lubell (the

"Negotiations") to obtain licensing rights from JVC to broadcast over the DISH Network an athletic event known as the "VIII Central American Sports Games" (the "Games").

13. The Negotiations culminated in the "PPV International Sports License Agreement" (the "Contract"), which was entered into on or about January 20, 2005. The Contract provided that JVC would exclusively license to EchoStar the live programming for 15 soccer games of the VIII Central American Sports Games to be held between November 24, 2005 through December 4, 2005 ("the Events"). A copy of the Contract is attached as Exhibit A and incorporated herein by this reference.

14. The Defendants represented that JVC possessed the exclusive rights to the Events and that JVC could grant rights for distribution of the Events into the continental United States including Washington D.C., Puerto Rico and U.S. Virgin Islands.

15. The Defendants also represented that JVC would transmit to EchoStar's network signals of the Events that were high-quality and in accordance with U.S. industry standards for television programming transmission. JVC was to provide at its cost the transmission facilities from the Event locations in Central America to an EchoStar designated uplink facility in the U.S. EchoStar was to then distribute the signal through its DISH Network. See paragraph 1.G Exhibit A.

16. On January 11, 2005, during the Negotiations, JVC, Vanegas, PLL and Lubell represented that JVC Entertainment, Inc. was a legitimate New York corporation that had ongoing operations. Lubell specifically represented to EchoStar "(t)he Licensor has a New York address and can (sic) served at its office in New York" and that "(t)here is not (sic) need for an agent to accept service of process." A copy of the correspondence is attached hereto as Exhibit B and incorporated herein by this reference. See specifically paragraph 5.2 Exhibit A; Paragraph 24 Exhibit B.

17. Furthermore, during the Negotiations JVC, Vanegas, PLL and Lubell represented that "The right to marketing, advertising and promoting should be limited to the Event." See specifically paragraph 2.1(v) Exhibit A and paragraph 3 Exhibit B. They also instructed that the name of the game should be "VIII Central American Sports Games Live Soccer Event". See paragraph 1, Exhibit B.

18. Pursuant to paragraph 3.2 of the Contract, EchoStar timely paid JVC a total of $125,000.00 on or before February 28, 2005.

19. JVC failed to deliver to EchoStar the video and audio signal for the Events as described in sections 1 and 4 of the Contract. JVC failed to return the monies paid to it by EchoStar and breached its obligations under the Contract generally and paragraph 2.2 specifically.

20. After the breach, EchoStar conducted an investigation and discovered that JVC did not have an office or operations as Defendants represented and could not be

otherwise located. EchoStar also discovered that the party named on the Contract, "JVC Entertainment, Inc." did not exist as a New York corporation as represented by PLL and Lubell in paragraph 24 of Exhibit B; and that Vanegas and Cordova had disappeared.

21. Furthermore Echostar's investigation revealed that the VIII Central American Sports Games were never held and that the rights that were represented to have been possessed by JVC could never have existed at the time of the Negotiations or at any time.

## III.
## CLAIMS

### FIRST CLAIM FOR RELIEF

(Deceit Based Upon Fraudulent Misrepresentations Against JVC, Vanegas, Cordova)

22. EchoStar incorporates the allegations contained in paragraphs 1 to 21 as if fully set forth herein.

23. JVC, Vanegas and Cordova made false representations of material facts as recounted above regarding, inter alia, the existence and operations of their business.

24. These facts were material.

25. JVC, Vanegas and Cordova made the representations knowing them to be false or they were aware that they did not know whether the statements were true or false.

26. JVC, Vanegas and Cordova made the representations with the intent that EchoStar would rely on the representations and EchoStar justifiably relied on these representations by inter alia entering into the Contract and then paying $125,000.00.

27. EchoStar's reliance caused EchoStar damages and losses in an amount not less than $125,000.00.

WHEREFORE, EchoStar requests the relief prayed for at the conclusion of this Complaint.

**SECOND CAUSE OF ACTION**

(Deceit Based on Nondisclosure or Concealment Against JVC, Vanegas, and Cordova)

28. EchoStar incorporates the allegations contained in paragraphs 1 to 27 as if fully set forth herein.

29. JVC, Vanegas and Cordova concealed and failed to disclose material facts including: (a) JVC did not have any legitimate operations or offices and that JVC did not exist as a New York corporation; (b) JVC did not have any rights to broadcast the Games. JVC, Vanegas and Cordova in fact intended to deceive EchoStar.

30. JVC, Vanegas and Cordova concealed and failed to disclose these facts with the intent of creating a false impression of the actual facts in the mind of EchoStar, viz. that JVC, Vanegas and Cordova had a legitimate business as represented in the Contract and that they intended to perform the obligations stated in the Contract.

31. EchoStar entered into the Contract and paid $125,000.00 relying on the assumption that the concealed and undisclosed facts did not exist or were different from what they actually were.

32. EchoStar's reliance was justified and caused it damages and losses not less than $125,000.00.

Wherefore, EchoStar requests the relief prayed for at the conclusion of this Complaint.

**THIRD CAUSE OF ACTION**

(Breach of Contract against JVC)

33. EchoStar incorporates the allegations contained in paragraphs 1 to 32 as if fully set forth herein.

34. JVC entered into the Contract with EchoStar for the rights to distribute, market, advertise and promote the video signals of the Events.

35. JVC failed to perform the Contract and breached its contractual obligations by, inter alia, failing to deliver the audio and visual signal described in the Contract and failing to return the monies paid to it.

36. EchoStar performed all of the conditions precedent under the Contract.

Wherefore, EchoStar requests the relief prayed for at the conclusion of this Complaint.

**FOURTH CAUSE OF ACTION**

(JVC As the Alter Ego of Vanegas and Cordova)

37. EchoStar incorporates the allegations contained in paragraphs 1 to 36 as if fully set forth herein.

38. Vanegas and Cordova utilized the corporate form of JVC to perpetrate their own fraudulent scheme and intentions on EchoStar. JVC had no legitimate or separate existence.

39. Upon information and belief, JVC was inadequately capitalized, kept no separate books and records and was at all times an instrumentality for Vanegas and Cordova.

40. JVC's corporate veil should be pierced and Vanegas and Cordova should be personally liable for all of JVC's obligations and liabilities.

Wherefore, EchoStar requests the relief prayed for at the conclusion of this Complaint.

**FIFTH CAUSE OF ACTION**

(Unjust Enrichment Against JVC, Vanegas and Cordova)

41. EchoStar incorporates the allegations contained in paragraphs 1 to 40 as if fully set forth herein.

42. In the alternative, JVC, Vanegas and Cordova were unjustly enriched by the payment to them by EchoStar of $125,000.00. The payment was made under inequitable circumstances and should not be retained by them.

Wherefore, EchoStar requests the relief prayed for at the conclusion of this Complaint.

**SIXTH CAUSE OF ACTION**

(Negligent Misrepresentation against PLL and Lubell)

43. EchoStar incorporates the allegations contained in paragraphs 1 to 42 as if fully set forth herein.

44. PLL and Lubell gave false information to EchoStar in the course of the Negotiations including the representation that "JVC Entertainment, Inc." was a validly existing New York corporation. See Exhibits A and B, specifically paragraph 24, Exhibit B page 3; and paragraphs 16 and 20 of this Complaint.

45. Furthermore, PLL and Lubell gave false information to EchoStar that the Events were scheduled in 2005, that JVC had exclusive marketing, advertising and promotion rights to the Events and that these rights were transferred to EchoStar. See Exhibits A and B, specifically paragraphs 1 and 3, Exhibit B page 1; and paragraphs 15, 17, and 21 of this complaint.

46. PLL and Lubell gave information orally and in a written position letter to EchoStar while in the course of

acting as attorneys/agents for JVC, Vanegas/Cordova in connection with the Contract.

47. PLL and Lubell gave the information to EchoStar for the guidance and use of EchoStar in the business transaction represented by Exhibit A.

48. PLL and Lubell were negligent in obtaining and communicating this information to EchoStar during the course of the Negotiations.

49. PLL and Lubell gave the information with the intent or knowing that EchoStar would act or decide not to act in reliance on the information with regard to the Negotiations.

50. EchoStar relied on the information supplied to it by PLL and Lubell by entering into the Contract; the reliance caused damage to EchoStar in an amount not less than $125,000.00.

Wherefore, EchoStar requests that a Judgment enter against the defendants jointly and severally for all monetary damages caused by the Defendants including monies paid by EchoStar, interest and costs, attorney fees as provided by the Contract and for such other and further relief that this Court deems just and proper.

JURY DEMAND

PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED BEFORE A JURY.

Respectfully submitted this 15 day of March 2007.

Jeffrey Cohen, #10876
Gary Tucker, #15811
Cohen & Associates, P.C.
ATTORNEYS FOR PLAINTIFF